UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RAYNARD DESHAWN COLEMAN,

    Plaintiff,

v.

CORIZON HEALTH,
SHARON R. DRAVELING,
PAULA E. BUSKE,
CYNTHIA MCGINNIS,
PATRICIA SCHMIDT,
KIM FARRIS,
JULIANA MARTINO,
HEATHER COOPER,
TERI JOHNSON,
HAROLD OBIAKOR,
JOHN & JANE DOES (#1-5),
UNKNOWN MARCUS, and
UNKNOWN AMALFTANO,

    Defendants.
_____/

Case No. 5:21-cv-13061
District Judge Judith E. Levy
Magistrate Judge Anthony P. Patti

## REPORT AND RECOMMENDATION TO DENY WITHOUT PREJUDICE PLAINTIFF'S DECEMBER 29, 2021 MOTION FOR PRELIMINARY INJUNCTION (ECF No. 3)

**I.**     **RECOMMENDATION**: The Court should **DENY WITHOUT PREJUDICE** Plaintiff's December 29, 2021 motion for preliminary injunction (ECF No. 3).

1

## II.     REPORT:

### A.     Background

Raynard Deshawn Coleman is currently incarcerated at the Michigan Department of Corrections (MDOC) Macomb Correctional Facility (MRF). In his pleading, he explains that around June 2010 he "suffered severe physical trauma as a result of a vehicle collision." (*Id.*, PageID.8 ¶ 22; *see also* ECF No. 1-1, PageID.184-207; ECF No. 1-2, PageID.240.) He describes his pre-arrest and post-arrest medication regimens. (*Id.*, PageID.9-10 ¶ 24.)

Coleman claims to have arrived at MRF on or about August 28, 2019. (*Id.*, PageID.10 ¶ 25.) A brief review of Coleman's medical record exhibits is helpful to the request for injunctive relief that is currently before the Court. On September 4, 2019, Coleman underwent lumbar spine x-rays, which revealed diffuse facet joint arthritic changes, no acute osseous changes, and mild muscle strain. (ECF No. 1-2, PageID.231.) It appears that he completed health care requests regarding his back pain as early as October 22, 2019. (ECF No. 1, PageID.66-68.)

Coleman continued to kite about back pain in January and February 2020. (ECF No. 1, PageID.69-71.) On June 13, 2020, he received two-week-long medical details for a wooden cane and an ice pack. (ECF No. 1, PageID.75.) He continued to kite health care about his back pain. (ECF No. 72-74, 77.) On September 10, 2020, he received a four-day medical detail for an ice pack. (*Id.*,

2

PageID.76; ECF No. 1-2, PageID.228.)  The following day, he kited health care, explaining that he had been taking Cymbalta for "at least 6 months" and asking "to be re-evaluated for new medications." (*Id.*, PageID.78.)  He continued to kite health care about his back pain later that same month. (*Id.*, PageID.82-83.)

On October 13, 2020, Coleman submitted another health care request regarding his back pain. (ECF No. 1, PageID.86-87.)  As early as October 16, 2020, he sought "medical shoes, [a] cane, [a] bottom bunk, and a back brace . . . ." (ECF No. 1, PageID.88.)  He kited health care again on October 21, 2020 (*id.*, PageID.89-91), and, on October 26, 2020, underwent lumbar spine x-rays, which revealed mild facet joint arthritic changes, mild muscle strain, and marked constipation/obstipation. (ECF No. 1-2, PageID.232.)  He continued to kite health care in late November 2020 and December 2020. (ECF No. 1, PageID.92-94; ECF No. 1-2, PageID.209-212).

More back-related kites were submitted in January 2021. (ECF No. 1-2, PageID.213-218).  On January 26, 2021, he received a 4-month medical detail for a wooden cane and a 2-month medical detail for a back brace. (ECF No. 1-2, PageID.227.)  It appears that his housing restriction for a bottom bunk was to expire on February 26, 2021. (*Id.*)  On May 5, 2021, he underwent a muscle electromyography test, which – although noting "difficulty with relaxation in lumbar paraspinal muscle testing, so subtle abnormal spontaneous activity could

3

not be excluded" – was described as a "normal examination." (ECF No. 1-2, PageID.233-236.) On June 1, 2021, he underwent an MRI, which revealed:

> 1. Disc bulge/protrusion L5-S1 abutting bilateral S1 nerve root and causing mild-to-moderate bilateral foraminal encroachment without significant central canal stenosis.
>
> 2. Disc bulge with annular fissure L4-5 with mild bilateral foraminal encroachment.

(ECF No. 1, PageID.28 ¶ 121; ECF No. 1-2, PageID.237-239.)

**B.  Grievances**

Coleman asserts that he has "exhausted all available administrative remedies . . . ." (ECF No. 1, PageID.3.) Attached to his complaint are copies of multiple MDOC grievances.[1] In at least one of these grievances, Coleman mentions several Defendants – Schmidt, Farris, Martino, Cooper, Johnson and Obiakor – for: (1) refusing to give him "the proper pain medication" for the seriousness of the lower

---

[1] *See* MRF-20-09-1951-28e (ECF No. 1-1, PageID.165-176 [March 2021 Step III grievance response]), MRF-20-09-2036-12z (ECF No. 1-1, PageID.177-183), MRF-20-09-2067-07Z (ECF No. 1-1, PageID.157-164 [January 2021 Step III decision]), MRF-20-09-2109-12B (ECF No. 1-1, PageID.148-156 [March 2021 Step III grievance response]), MRF-20-09-2137-12z (ECF No. 1-1, PageID.128-137 [December 2020 Step III response]), MRF-20-09-2159-12F (ECF No. 1-1, PageID.138-147 [December 2020 Step III response]), MRF-20-10-2430-12z (ECF No. 1-1, PageID.112-119 [February 2021 Step III response]), MRF-20-10-2431-12z (ECF No. 1-1, PageID.120-127 [February 2021 Step III response]), MRF-20-11-2650-12z (ECF No. 1, PageID.97-104 [February 2021 Step III response]), MRF-20-11-2651-28A (ECF No. 1-1, PageID.105-111 [March 2021 Step III decision]), MRF-20-12-2862-12E1 (ECF No. 1, PageID.61-64, 96), and MRF-20-12-2867-12e1(28e) (ECF No. 1, PageID.95 [June 2021 Step III grievance response]). (*See also* ECF No. 1-2, PageID.222.)

back pain he endures; and, (2) failing to give him "the proper medical supplies/equipment[,]" such as a back brace, shoes, a cane, hot water bag(s), and a bottom bunk. (ECF No. 1-1, PageID.148 [MRF-20-09-2109-12B]). The October 12, 2020 Step I grievance response noted, *inter alia*:

> The Grievant was informed to continue his current pain meds, do range-of-motion exercises, given an ice detail and lay-in. *Grievant has never requested a detail for shoes, back brace, cane, or bottom bunk detail*. Hot water bags are no longer given out by the MDOC.

(*Id.*, PageID.150 (emphasis added).) As we know from the above review of the medical record exhibits, he appears to have requested these items shortly thereafter. (ECF No. 1, PageID.88.) In any event, Coleman's Step II appeal was denied on October 28, 2020, and his Step III appeal was rejected on March 29, 2021. (ECF No. 1-1, PageID.153-155.)

    C.    **Complaint**

On December 29, 2021, while housed at MRF, Coleman filed the instant, verified complaint against Corizon Health, several individuals purportedly located at MRF, and John and Jane Does (#1-5). (ECF No. 1, PageID.4-8 ¶¶ 8-20; *id.*, PageID.34.) The facts underlying Plaintiff's complaint stem from his arrival at MRF and continue to July 13, 2021, at which point he claims Defendant Farris said she would "put in for Steroid [shots] to [his] spine." (ECF No. 1, PageID.11-29 ¶¶ 29-125.)

Of import to the matter currently before the Court is his allegation that, on May 11, 2021, he spoke with Practitioner Juliano Martino "about putting in for a Toridol shot and updating his bottom bunk detail and cane." (ECF No. 1, PageID.28 ¶ 117.) Plaintiff attests that his three-month bottom bunk detail was "never updated" and that Corizon refuses "to give him reasonable accommodations such as a back brace, medical walking shoes, a cane and a bottom bunk detail . . . ." (ECF No. 1, PageID.38.)

Plaintiff's causes of action are based on retaliation and discrimination, cruel and unusual punishment, failure to protect, and equal protection and due process. (*Id*., PageID.29-33 ¶¶ 126-137.) He seeks declaratory, injunctive, compensatory, and punitive relief, as well as expenses and costs. (*Id*., PageID.33-34 ¶¶ A-K.)[2]

### D.     **Instant Motion**

Judge Levy has referred this case to me for all pretrial matters. (ECF No. 10.) Currently before the Court is Plaintiff's December 29, 2021 two-page motion for preliminary injunction (ECF No. 3), wherein he seems to seek, *inter alia*, "[p]hysical therapy, better medications, a cane, [a] back brace, medical walking

---

[2] On January 18, 2022, the U.S. Marshal Service attempted service by mail upon all but the John Doe Defendants. (ECF No. 9.) To date, eleven Defendants – Corizon Health, Buske, Schmidt, Farris, Martino, Obiakor, Marcus, Draveling, McGinnis, Johnson and Amalfitano – have appeared. (ECF Nos. 11, 14-18, 20, 22, 24 & 26.) Defendant Cooper has yet to appear.

shoes, [a] bottom bunk and an extra mattress . . . ." (ECF No. 3, PageID.248-249; *see also* ECF No. 1, PageID.34 ¶ E.)

As the Sixth Circuit has explained, "[f]our factors guide the decision to grant a preliminary injunction:

> (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury absent the injunction; (3) whether the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of an injunction.

*S. Glazer's Distributors of Ohio, LLC v. Great Lakes Brewing Co.*, 860 F.3d 844, 849 (6th Cir. 2017) (quoting *Bays v. City of Fairborn*, 668 F.3d 814, 818–19 (6th Cir. 2012)).

While Plaintiff addresses the third and fourth factors in brief fashion (ECF No. 3, PageID.248-249 ¶¶ 3, 7), his focus is upon the first and second factors. Regarding his likelihood of success on the merits, Plaintiff contends that Defendants, "on numerous occasions, have shown deliberate indifference to Plaintiff[']s urgent medical needs[,]" states that his special accommodations "expired long before they should have[,]" and notes that, "[w]henever a prisoner is identified as having a medical condition that restricts their ability to function adequately, a QHP [Qualified Health Professional] shall identify reasonable options available in a corrections setting that will meet the prisoner's special

7

medical need." MDOC PD 04.06.160 ¶ E (effective Aug. 24, 2020).³ (*Id*., ¶¶ 4, 6; *see also* ECF No. 1, PageID.59-60.)

Even if the Court were to conclude that Plaintiff has a strong likelihood of success on the merits, the Court currently is not in a position to determine "whether the movant would suffer irreparable injury absent the injunction[.]" *S. Glazer's Distributors of Ohio, LLC*, 860 F.3d at 849. Notwithstanding Plaintiff's claims within his verified complaint, the only medical records currently before the Court are those attached to Plaintiff's complaint, which include, as discussed above:

- Records from 2010 (ECF No. 1-1, PageID.184-207; ECF No. 1-2, PageID.240)

- Kite responses from Defendant Nurses Draveling, Buske, McInnis and Hering (ECF No. 1, PageID.66-74, 77-78, 82-83, 86-87, 89-91; ECF No. 1-2, PageID.210)

- Kite responses from Elizabeth Lueth, R.N. and Amanda Carman, R.N. (ECF No. 1, PageID.88, 92-94; ECF No. 1-2, PageID.209, 211-218)

- The MDOC Medical Detail Special Accommodations dated June 2020 to May 2021 (ECF No. 1, PageID.75-76; ECF No. 1-2, PageID.227-228)

- September 2019 and October 2020 lumbar spine x-rays (ECF No. 1-2, PageID.231-232)

---

³ MDOC PD 04.06.160 defines a Qualified Health Professional (QHP) as a "Physician, Psychiatrist, Nurse Practitioner, Physician Assistant, Psychologist, Social Worker, Licensed Professional Counselor, Dentist or Registered Nurse who is licensed and registered/certified by the State of Michigan to practice within the scope of their training." MDOC PD 04.06.160 ¶ B.

- May 2021 EMG reports (*id.*, PageID.233-236)
- June 2021 lumbar spine MRI (*id.*, PageID.237-239)

Plaintiff claims, in conclusory fashion, that, without the injunction he seeks, he will suffer irreparable harm. Specifically, the entirety of his allegation states:

> Plaintiff will continue to suffer irreparable injury to his lower chronic back condition[,] which is his L4 and S1 herniated disks. Also, he'll continue to suffer irreparable injury to his anterior spondylosis[,] which is seen to involve the vertebrae L5 and S1 levels[,] if the injunction is not granted[.] It's fair to say that Plaintiff could fall from a top bunk, *if placed there*, due to the nature of his condition[.]

(*Id.*, ¶ 2 (emphasis added).) Moreover, Plaintiff contends he has been "personally harmed and now can barely walk at times[,]" and he "fear[s] . . . his future health will continue to get worse without the proper medical care, medications and accommodations[.]" (*Id.*, PageID.249 ¶ 5.) But these conclusory assertions, without more, are insufficient to show the immediacy of the alleged irreparable harm. *See*, *e.g.*, *Cap. for Merchants, L.L.C. v. Wealth Creating Invs.*, No. 216CV13610LJMDRG, 2016 WL 9280075, at *2 (E.D. Mich. Oct. 13, 2016) (Michelson, J.) ("CFM's claims of irreparable harm are not only too conclusory to grant any type of injunctive relief . . . they also fail to show why the irreparable harm is so immediate that this Court must rule now as opposed to in a month or two."). Here, without strong medical evidence that supports such dire eventualities, Plaintiff's allegations are too speculative to support injunctive relief. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) ("A preliminary

9

injunction is an extraordinary remedy never awarded as of right.") (citing *Munaf v. Geren*, 553 U.S. 674, 689-690 (2008)). Moreover, the Court is in no position at this time, particularly without the benefit of adversarial discovery and motion practice, to opine on the likelihood of Plaintiff's success on the merits. Indeed, at first blush, Plaintiff will need a significantly more developed record and argument to demonstrate that, with all the medical care he did receive, as cited above, he is *likely* to move the needle from mere professional negligence to deliberate indifference under the Eighth Amendment and, ultimately, succeed on the merits. *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 843-844 (6th Cir. 2002) ("'[w]hen the need for treatment is obvious, medical care which is so cursory as to amount to no treatment at all may amount to deliberate indifference.'") (quoting *Mandel v. Doe,* 888 F.2d 783, 789 (11th Cir.1989)). *See also Gonzales v. Nat'l Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000) (explaining that "a finding that there is simply no likelihood of success on the merits is usually fatal"). And Plaintiff must bear in mind that "the proof required for [a] plaintiff to obtain a preliminary injunction is much more stringent than the proof required to survive a summary judgment motion[.]" *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000).

### E. Conclusion

In sum, because the Court is not in a position to determine the alleged irreparability of Plaintiff's injury, the Court should **DENY WITHOUT PREJUDICE** Plaintiff's December 29, 2021 motion for preliminary injunction (ECF No. 3).

### III. PROCEDURE ON OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Fed. R. Civ. P. 72(b)(2) and E.D. Mich. LR 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.* Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.* If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: April 5, 2022

Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE